# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Okwuchukwu E. Jidoefor, | Case No. 22-cv-1686 (KMM/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| City of Minneapolis Police Department; The 3rd Precinct, and its Officers; Kehung Anderson; John Does Officers #1–10; and Freedom Specialty Insurance Company, | |
| Defendants. | |

Okwuchukwu E. Jidoefor, Sherburne County Jail, 13880 Business Center Dr. NW, Elk River, MN 55330, *pro se*.

This action is before the Court on Plaintiff Okwuchukwu E. Jidoefor's (1) Amended Complaint [ECF No. 8], and (2) Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 2 ("IFP Application")]. For the following reasons, the Court recommends dismissing the Amended Complaint and denying the IFP Application as moot.

## I.    BACKGROUND

The present action arises from an earlier civil action concerning Jidoefor. The Court will thus summarize that earlier action before discussing the Amended Complaint.

### A.    *Jidoefor v. Freedom Specialty Insurance Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn.).

In April 2016, Jidoefor and Vince Automotive Group ("VAG")—a business associated with Jidoefor—sued Freedom Specialty Insurance Company ("FSIC") in Minnesota

state court; FSIC removed the action to federal court.  [*See* Not. of Removal by Def. 1, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Apr. 27, 2016).[1]]  The complaint asserted that (1) FSIC had issued one or both of the plaintiffs an insurance policy providing "benefits for business and commercial insurance"; (2) in January 2015, 39 policy-covered vehicles were stolen from the plaintiffs; and (3) FSIC breached its insurance-policy contract by failing to pay out the plaintiffs' claim for the vehicles.  [*See* Compl. 1–2, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 27-CV-16-6225 (Minn. Dist. Ct. Mar. 20, 2014) (attached as exhibit to removal notice) ("State-Court Complaint").[2]]  In a federal-court counterclaim, FSIC sought a declaratory judgment that its policy provided no relevant coverage.  [*See* Answer of FSIC to Pls.' Compl. 7, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Apr. 27, 2016).]

In September 2016, U.S. Magistrate Judge Franklin L. Noel referred Jidoefor to the Federal Bar Association's Pro Se Project.  [*See* Ltr. 1, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Sept. 6, 2016).]  Attorneys from Briggs & Morgan, P.A., soon began working with Jidoefor and VAG.  [*See, e.g.*, Ltr. 1, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Nov. 29, 2016).]

In March 2017, FSIC filed a motion (the "Recordings Motion") seeking recordings of Jidoefor's telephone calls from the Sherburne County Jail ("SCJ") between November

---

[1] Materials from No. 16-CV-1109 (and other cases) cited in this Report and Recommendation do not appear in this action's docket.  The materials are public court records, however, so this Court may take judicial notice of them.  *See, e.g.*, *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (citing *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999)); *Washington v. Titus*, No. 21-CV-0921 (MJD/TNL), 2021 WL 2300738, at *1 n.1 (D. Minn. Apr. 13, 2021), *report and recommendation adopted*, 2021 WL 2292265 (D. Minn. June 4, 2021).

[2] The state-court plaintiffs dated the complaint March 20, 2014, but this is presumably a typographical error, given the complaint's references to events in 2015. [*See* State-Court Compl. 1–2.]

2014 and April 2015.[3] [*See, e.g.*, Def.'s Mem. of Law in Supp. of Mot. to Order the Release of Sherburne Cnty. Jail Telephone Records 1–2, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Mar. 2, 2017).] FSIC asserted that information acquired in discovery suggested that Jidoefor and VAG had "engaged in fraud and/or intentional misrepresentation"—specifically, that "no theft occurred at [VAG] and that, instead, some or all of the 39 vehicles that were reported stolen . . . were either sold by, or on behalf of, plaintiffs, but that plaintiffs did not transfer the vehicle title to the new owner; sold for scrap by, or on behalf of, plaintiffs; or were impounded." [*Id.* at 4–5.] FSIC thus wanted any recordings of Jidoefor's calls to see if he had been "directing" an "insurance-fraud scheme" from jail. [*Id.* at 11–12.]

As relevant here, the affidavits and exhibits that FSIC submitted with the Recordings Motion included (1) deposition testimony from Kehung Anderson, a Minneapolis police officer who testified that he had initially investigated the alleged vehicle theft; and (2) declarations from Brian Florek (a tow-truck driver who allegedly towed various vehicles from VAG in January 2015) and Takisha Jackson (who allegedly bought a vehicle from VAG, then had difficulty getting title documents). [*See* Decl. of Katherine A. McBride, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Mar. 2, 2017) (including Anderson-deposition excerpts as exhibit); Decl. of Brian Florek, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Mar. 2,

---

[3] Jidoefor had been detained during this period due to an alleged violation of supervised release arising from an earlier federal conviction. [*See, e.g.*, Docket, *United States v. Jidoefor*, No. 11-CR-0386 (MJD) (D. Minn.).]

2017) ("Florek Declaration")]; Decl. of Takisha Jackson, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Mar. 2, 2017) ("Jackson Declaration").]

In April 2017—before any ruling on the Recordings Motion—the parties filed a stipulation agreeing to dismiss the action; U.S. District Judge Paul A. Magnuson dismissed the case with prejudice shortly thereafter. [*See* Stipulation to Dismiss with Prejudice 1, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Apr. 5, 2017) ("Stipulation"); Order 1, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. Apr. 6, 2017).] Under the stipulation, the parties dismissed the action "on the merits and without costs and disbursements to any party," and the parties specified that the stipulation "shall not, under any circumstances, be construed as an admission of liability or guilt by or on behalf of any party." [Stipulation 1.]

Four years later, Jidoefor and VAG filed a *pro se* notice of appeal, asserting that "new evidence ha[d] recently been discovered which would change the outcome of this case"—evidence ostensibly previously unavailable because it had only recently been unsealed. [Not. of Appeal 1, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 16-CV-1109 (PAM/FLN) (D. Minn. May 27, 2021).] The U.S. Court of Appeals for the Eighth Circuit dismissed the appeal for lack of jurisdiction. [*See* J. 1, *Jidoefor v. Freedom Specialty Ins. Co.*, No. 21-2331 (8th Cir. July 13, 2021).]

B.    **The Present Action**

With this background in place, the Court turns to the present action. The Court received Jidoefor's original complaint in this matter [ECF No. 1 ("Complaint")] and the IFP Application on June 29, 2022. [*See* Docket.] In late July, the Court indicated that

Jidoefor would need to pay an initial partial filing fee of $92.06 for this action to proceed. [*See* ECF No. 7 at 3–4.] The Court also warned Jidoefor that, while the Complaint asserted that this Court had jurisdiction over this action based on diversity jurisdiction under 28 U.S.C. § 1332, "[t]his [was] almost certainly incorrect" because the Complaint "[did] not feature complete diversity." [*See id.* at 3 n.2 (citing cases and Complaint).]

On August 8, 2022, Jidoefor filed the Amended Complaint.[4] Presumably in response to the Court's jurisdictional concern, Jidoefor now contends that this Court's jurisdiction over this action rests on federal-question jurisdiction under 28 U.S.C. § 1331. [*See* Am. Compl. 2.]

The Amended Complaint names five Defendants. The caption's reference to the City of Minneapolis Police Department ("MPD") is self-explanatory, and the Court construes the reference to "[t]he 3rd Precinct, and its officers" to mean the MPD's Third Precinct and all the officers stationed there. [*See id.* at 1, 3.] The Amended Complaint also names Kehung Anderson as a Defendant, as well as a group of ten "John Doe" defendants (each an unnamed MPD officer).[5] [*See id.* at 4.] Finally, the Amended Complaint names FSIC. [*See, e.g., id.* at 4–5.]

Jidoefor purports to bring this action under 42 U.S.C. § 1983. [*See id.* at 1.] As the Court understands it, the Amended Complaint's thrust is that FSIC knowingly filed false

---

[4] As a threshold point, the Court concludes that the Amended Complaint is now this action's operative complaint. Under Rule 15 of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course within . . . (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." The Complaint had never been served on any Defendants, so when Jidoefor filed the Amended Complaint, he was still entitled to amend "as a matter of course."

[5] Jidoefor states that he is suing all these individual defendants in both their individual capacities as well as their official capacities. [*See* Am. Compl. 1.]

or misleading information in its filings in No. 16-CV-1109 in support of the Recordings

Motion. [*See id.* at 4.]

- First, Jidoefor claims that Anderson lied at his deposition and actually was not the officer who first investigated the alleged vehicle theft at VAG.[6] [*See id.* at 7–8.]

- Second, Jidoefor suggests that statements in Florek's declaration about Florek's employer are inconsistent with Minnesota business records. [*See id.* at 9.] He also claims that a key Florek Declaration assertion—that in the process of towing various vehicles, Florek saw someone sign various bills of sale for vehicles that Florek towed—is false and denied by the alleged signer. [*See id.* at 9–10; *cf.* Florek Decl. 2 (containing relevant allegation).]

- Finally, Jidoefor suggests that the Jackson Declaration was "fraudulent" because she purportedly never signed it. [Am. Compl. 12.] He claims to have learned that Jackson "knew nothing of the [s]ignature let alone [the] actual [d]eclaration." [*Id.*]

For relief, Jidoefor asks for declaratory judgments—stating that Defendants' conduct was wrongful and violated his constitutional rights—as well as compensatory and "special" damages. [*Id.* at 12–13.]

## II.    ANALYSIS

### A.    Standard of Review

Rather than pay this action's filing fee, Jidoefor submitted the IFP Application. The IFP Application indicates that Jidoefor qualifies financially for IFP status. But under the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion

---

[6] The ground for this argument appears to be that the deposition notice leading to Anderson's deposition referred to a "Ken Anderson" rather than "Kehung Anderson." [*See* Am. Compl. 7.] Jidoefor also asserts that he sent a "data request" to the City of Minneapolis asking for any data about himself or the address where the theft took place, and that "none of [the] reports he received back mentioned a 'Kehung Anderson.'" [*Id.* at 8.] The idea appears to be that in fact a distinct person named Ken Anderson did the initial investigation, but was never deposed as part of No. 16-CV-1109.

thereof, that may have been paid, [a] court shall dismiss [a] case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2)(B)(ii). While the wording here refers to a "case," this District's Courts routinely use § 1915(e)(2) to dismiss portions of cases as well. *See, e.g.*, *Mendez v. Kallis*, No. 21-CV-1147 (PJS/BRT), 2021 WL 3476681, at *2 n.3 (D. Minn. May 27, 2021), *report and recommendation adopted in relevant part*, 2021 WL 2911171 (D. Minn. July 12, 2021), *aff'd*, No. 21-2667, 2021 WL 6689158 (8th Cir. Aug. 16, 2021); *Hunter v. Mayo Clinic*, No. 21-CV-0742 (ECT/HB), 2021 WL 1877638, at *2 n.3 (citing cases) (D. Minn. Apr. 16, 2021) (citing cases), *report and recommendation adopted*, 2021 WL 1873430 (D. Minn. May 10, 2021).

To assess whether the Amended Complaint states a claim, the Court assumes that its allegations are true and makes all reasonable Jidoefor-favoring inferences based on them. *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594–95 (8th Cir. 2009) (citing cases). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555 (citing authorities). A district-court determination of whether a plaintiff meets this standard is "context-specific"; a court must "draw on its judicial experience and common sense." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (cleaned up)). Although the Court construes *pro*

*se* complaints liberally, *pro se* litigants "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

Furthermore, under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

### B.    The Amended Complaint's Federal-Law Claims

The Amended Complaint contains scattered references to federal constitutional provisions and federal statutes. On review, however, the Court concludes that Jidoefor fails to state any federal-law claim for which the Court can grant relief.

### 1.    Federal Tort Claims Act

The Amended Complaint's first paragraph suggests that Jidoefor means to raise a "Federal Liability Tort Claim." [*See* Am. Compl. 1.] What this means is unclear, but one interpretation is that Jidoefor is referring to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80. But any FTCA claim is a nonstarter here. The FTCA establishes procedures for suing "federal employees acting within the scope of their [federal] employment." *Brownback v. King*, 141 S. Ct. 740, 745 (2021); *see also, e.g.*, *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (holding that plaintiffs failed to state FTCA claim because they did not allege that defendants "were employees of the federal government" (citing federal statutes)). No Defendants in this action are federal employees, so the FTCA does not apply here.

### 2.    42 U.S.C. § 1983

The Amended Complaint also refers to 42 U.S.C. § 1983, a federal statute.  Critically, however, § 1983 merely provides a procedural vehicle for a plaintiff to bring claims under distinct federal constitutional provisions or federal statutes—§ 1983 itself provides no substantive causes of action.[7]  *See, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)); *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012) (citing cases).  By itself, then, mere invocation of § 1983 states no claim for which this Court can grant relief.

### 3.    "Equal Protection"

The Amended Complaint briefly refers to "equal protection" and the U.S. Constitution's Fourteenth Amendment.  [*See* Am. Compl. 1, 13.]  Reading the Amended Complaint liberally, the Court construes this as an attempt to assert some sort of constitutional equal-protection claim.  Under the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.[8]

---

[7] Under § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof *to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.)  The Court also observes that under § 1983's terms, it provides a cause of action only against so called "state action."  *See, e.g.*, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citing cases); *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (same).  Given this state-action requirement, the Court struggles to see how any § 1983 claims could apply to FSIC in the circumstances alleged in the Amended Complaint.

[8] While the Amendment's text refers directly to conduct by "[s]tate[s]," case law is clear that this equal-protection requirement also applies to local governments.  *See, e.g.*, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368–69 (2001); *Bd. of Estimate of City of N.Y. v. Morris*, 489 U.S. 688, 692 (1989) (citing cases).

Notwithstanding this equal-protection reference, the Amended Complaint fails to state a Fourteenth Amendment equal-protection claim.

Under the Constitution's equal-protection guarantee, governmental officials generally must treat similarly situated people alike. *See, e.g.*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *New Doe Child #1 v. United States*, 901 F.3d 1015, 1027 (8th Cir. 2018) (citing *City of Cleburne*). Equal-protection claims fall into two categories. The first "has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'" *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 601 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). In such actions, "[p]laintiffs . . . generally allege that they have been arbitrarily classified as members of an 'identifiable group,'" then assert unequal treatment based on the classification. *Id.* (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Jidoefor plainly has not pleaded this sort of claim: nothing in the Amended Complaint alleges that someone has classified him as part of a relevant identifiable group, or that such a classification has led to unequal treatment.

This leaves the second kind of equal-protection claim. Plaintiffs can "in some circumstances" argue that they have "been irrationally singled out as a so-called 'class of one.'" *Id.* (discussing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam)).

> As we explained long ago, the Fourteenth Amendment "requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons

> subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a "rational basis for the difference in treatment."

*Id.* (citations omitted).

To plead a class-of-one equal-protection claim, a plaintiff must allege "'that a defendant intentionally treated [him] differently from others who are similarly situated and that no rational basis existed for the difference in treatment.'" *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1129 (8th Cir. 2016) (quoting *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011)). To do this properly, a plaintiff must "'provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations.'" *Id.* (quoting *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015)).

Reciting these standards basically dooms any chance of finding a class-of-one equal-protection claim in the Amended Complaint. To say the least, Jidoefor provides nothing like a "specific and detailed account" of how some similarly situated individuals were treated better than he was. The Amended Complaint therefore fails to state any class-of-one equal-protection claim. And because Jidoefor fails to state an equal-protection claim under either of the two ways to do so, the Amended Complaint fails to state any equal-protection claim.

### 4.    Eighth Amendment

As a final federal-law reference, Jidoefor suggests that the Amended Complaint raises claims under the U.S. Constitution's Eighth Amendments.  [*See* Am. Compl. 13.] On its face, the Eighth Amendment seems inapplicable here: under that amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  None of these prohibitions bear on the conduct described in the Amended Complaint.

In summary, then, while the Amended Complaint contains various references to federal constitutional provisions and federal statutes, the Court concludes that Jidoefor has failed to state any federal-law claim.

### C.    Supplemental Jurisdiction

The Amended Complaint's lack of any properly pleaded federal-law claims leads to the question of whether this Court has jurisdiction over what claims remain.  In this vein, the Court observes that the Amended Complaint repeatedly refers to purported fraud, and also refers to causes of action such as "tortuous interference" (which the Court assumes means tortious interference with contract), intentional and/or negligent infliction of emotional distress, and defamation.  [*See, e.g.*, Am. Compl. 1.]  These are quintessential state-law torts.  This order need not opine on whether Jidoefor has properly stated any state-law claims; for present purposes, the key point is simply that any such claims are not federal-law claims.  To exercise jurisdiction over these state-law claims, this Court must have "supplemental jurisdiction" over them.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." As this wording makes clear, however, supplemental jurisdiction only exists in situations where there are claims over which a district court has original jurisdiction in the first place. Here, as discussed above, the Amended Complaint fails to state any claim over which this Court has original jurisdiction,[9] so the Court cannot exert supplemental jurisdiction over the Amended Complaint's state-law claims. The Court therefore dismisses the Amended Complaint's state-law claims for lack of jurisdiction.

### D.    IFP Application

Under the above analysis, the Court recommends dismissing the entire Amended Complaint: the federal-law claims, for failure to state a claim; the state-law claims, for lack of jurisdiction. Given this recommendation, the Court also recommends denying the IFP Application as moot.

---

[9] Aside from federal-question jurisdiction, there is another common route to federal subject-matter jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332. As relevant here, § 1332(a)(1) gives federal district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of costs, and is between . . . citizens of different States." As noted above, however, the Court indicated to Jidoefor early on [*see* ECF No. 7 at 3 n.2] that diversity jurisdiction requires "complete diversity": "diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphases in original); *see also, e.g.*, *Thomas v. Henry*, No. 19-CV-2930 (JRT/BRT), 2020 WL 620321, at *1 (D. Minn. Jan. 15, 2020) (citing Kroger), *report and recommendation adopted*, 2020 WL 618412 (D. Minn. Feb. 10, 2020). Here the amended complaint has a Minnesota-citizen plaintiff and multiple Minnesota-citizen defendants, so complete diversity does not exist here. Diversity jurisdiction thus cannot provide subject-matter jurisdiction here.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT**

**IS HEREBY RECOMMENDED THAT**:

1. This action's federal-law claims be **DISMISSED** without prejudice for failure to state a claim.

2. This action's state-law claims be **DISMISSED** without prejudice for lack of jurisdiction.

3. Jidoefor's Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 2] be **DENIED** as moot.

4. Jidoefor be **ORDERED** to pay the unpaid balance—$257.94—of this action's statutory filing fee in the manner prescribed by 28 U.S.C. § 1915(b)(2), and the Clerk of Court be **ORDERED** to provide notice of this requirement to the authorities at the institution where Jidoefor is confined.

Dated: October __11__, 2022                    _____*s/ Tony N. Leung*_____
                                                                          Tony N. Leung
                                                                          United States Magistrate Judge
                                                                          District of Minnesota

                                                                          *Jidoefor v. City of Minneapolis Police*
                                                                          *Department et al.*
                                                                          Case No. 22-cv-1686 (KMM/TNL)

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).